UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL No.
12-10120-GAO

UNITED STATES OF AMERICA

v.

EDGAR ACEVEDO, JULIO GONZALEZ
DEBORAH TORRES and WILLIAM AYALA

**MEMORANDUM OF DECISION AND ORDER ON**
**DEFENDANTS' MOTIONS TO PRODUCE UNREDACTED DOCUMENTS**

March 28, 2014

DEIN, M.J.

## I. BACKGROUND

The defendant Julio Gonzalez, joined by the remaining defendants, has filed three motions seeking an order compelling the Government to produce unredacted documents (Docket Nos. 237, 254, 278). This matter has been addressed by the court with the parties over the course of several months. At issue is whether the Government may continue to withhold the identify of three cooperating witnesses ("CWs"), and redact not only their names, but also other information contained in various reports and other documents which may identify the CWs.[1] Over the course of the past several

---

[1] The redacted documents initially fell into three main categories: forensic reports, FBI 302s and grand jury transcripts. According to the Government, the remaining redactions largely involve (i) the names or identifying information for the CWs, (ii) case numbers assigned to the documents by the FBI, and (iii) dates of birth or other identifying numbers of individuals identified by name in the reports. (Docket No. 58). In light of the Government's broad interpretation of "identifying information," narrative reports are very difficult to follow given all the redactions.

months, the Government has reduced the amount of information it is redacting. However, the defendants have continued to argue that the redactions render the documents very difficult, if not impossible, to understand. The defendants have submitted exemplars of the redacted materials and the court agrees with the defendants' description of the consequences of the redactions.

At the court's insistence, the Government filed information in accordance with the declination procedures set forth in Local Rule 116.6(A). (See Docket No. 283). Specifically, the Government has submitted the affidavit of Special Agent Paul Santana of the FBI, which is dated May 23, 2013 and was submitted in support of the Government's motion to detain the then recently indicted defendants Nolasco, Gonzalez, Torres and Ayala. It has also submitted the detention affidavit of Special Agent John A. Orlando IV dated September 28, 2012. That affidavit relates to a different group of alleged kidnappers who were indicted in a different case pending in this court, United States v. Guzman, et al., Docket No. 12-10264-GAO.[2] The Government has represented that although their methods of operation may be similar (kidnapping alleged drug dealers for ransom), there is no connection between the individuals involved in the two cases.

According to the Government, these affidavits establish that the names of the CWs should remain confidential in the instant case. Thus, the Government asserts:

> As the Affidavits make clear, agents have interviewed victims of
> kidnappings, witnesses to kidnappings, and debriefed several

---

[2] The affidavit was apparently filed in the case of United States v. Morales, et al., Docket No. 12-10323-DJC, but relates to the activities of the Guzman kidnapping group.

> cooperating witnesses and confidential informants who were themselves members of these Joloperros kidnapping crews. Through these debriefings, agents have learned that Joloperros crews often use sophisticated means to study and track potential victims to discern their daily patterns, habits, and activities. Some crews have used police uniforms or badges to approach victims by surprise and used firearms and handcuffs to secure and abduct victims. After a successful abduction, the crews demand ransom – paid in drugs and/or money – for the victim's safe return. Several victims of these kidnappings have been assaulted, beaten, and burned while held captive.
>
> As is set forth in the Affidavits (in particular, Exhibit 1 [the Santana affidavit]), the defendant is part of one violent kidnapping crew that used firearms to abduct the victim and held the victim for days for ransom. Given the violence inherent in the crime itself; the number of participants involved in the planning and execution of all aspects of the crime (and the possibility that other associates remain at large); the fact that threats have been made to a cooperating witness in another, similar case, <u>United States v. Guzman et al.</u>, Cr. No. 12-10264-GAO;* and the potential penalty faced by the defendants if convicted, the government believes that disclosing the identities of the cooperating witnesses at this time would be detrimental to the interests of justice. Such a disclosure would jeopardize the safety of the cooperating witnesses and their families.
>
>> \* In <u>Guzman</u>, one of the kidnappers threatened a cooperating witness (who was also in custody) and attempted to pressure the cooperating witness into changing his grand jury testimony. Agents applied for and were granted permission to record the kidnapper's efforts to pressure the cooperating witness into changing his testimony.

(Docket No. 283 at 2-3).

In the instant case, all the defendants have been indicted. All named defendants are detained and the Government does not contend that any participants remain at large. There is no evidence of any threats to any witnesses. This court ordered the disclosure of the identity of one CW, for attorneys eyes only, more than a

year ago. The identity of the other two CWs are known to all parties. Apart from the use of a gun in the initial abduction, there is no evidence of any violence in the instant case. The alleged victim was not physically harmed, nor did the alleged kidnappers pretend to be police in connection with the kidnapping.

## II. ANALYSIS

This court concludes that the Government has not established that there is any further basis for withholding the names of the CWs and/or redacting information which may identify them, except for FBI numbers and personal identifiers that are routinely kept confidential. In an abundance of caution, however, this court will limit the disclosure to defense counsel, paralegals and investigators.

This case has been pending for a considerable period of time. All of the defendants are detained and some are awaiting sentencing. Despite the fact that the identity of the CWs have been known to at least counsel for a considerable period of time, there is no evidence of any attempts to interfere with or threaten any witnesses. Moreover, there is no evidence that any of the defendants in this case were involved in the type of violence at issue in the Guzman matter, which may have warranted confidentiality in that case.

The redactions by the Government have rendered the documents incomprehensible. By this time, the remaining defendants should be finalizing their decisions as to how to proceed in this matter, not attempting to figure out the meaning of basic FBI reports. While safety concerns may have been paramount when the case began, the interests of justice no longer require such secrecy.

**ORDER**

For all the reasons detailed herein, the defendants' motions to compel the Government to produce unredacted documents (Docket Nos. 237, 254, 278) are ALLOWED. The Government shall produce unredacted documents[3] within 21 days of the date of this Order. The production, and the disclosure of the identity of the CWs, shall be limited to defense counsel, paralegals and investigators. No broader review or disclosure of the documents, and/or information contained therein, shall be made without further order of the court.

/ s / Judith Gail Dein
JUDITH GAIL DEIN
UNITED STATES MAGISTRATE JUDGE

---

[3] Nothing herein shall require the disclosure of FBI numbers or other identifiers that are usually redacted.